```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/27/07
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
UNITED STATES OF AMERICA,            :

               Plaintiff,       :

         - against -               :

ANTHONY COLOMBO et al.,              :

            Defendants.     :
--------------------------------X

**MEMORANDUM AND ORDER**

04 Cr. 273 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

    This multi-defendant criminal case went to trial with six defendants[1] in January of 2007 (the "Trial"), resulting in a partial verdict and in a mistrial for those counts on which the jury did not reach a verdict.  At the Trial, the jury failed to return a verdict for any of the charges against defendant Francis Altieri ("Altieri"), and Altieri now moves to dismiss those charges on Double Jeopardy grounds.  For the reasons discussed below, Altieri's motion is denied.

## BACKGROUND

    The Trial lasted approximately three weeks after the completion of jury selection.  The government presented evidence over the course of ten days, between January 18 and January 31, and the defense presented evidence on four days, between February 1 and February 6.  The parties presented their

---

[1] Nineteen defendants were named in the original indictment.  Unbeknownst to the government, one defendant had died prior to his indictment.  Twelve defendants plead guilty before trial.

summations between February 7 and 9, and the case went to the jury on February 13.

During the course of its deliberations, the jury informed the Court that it was having trouble reaching a verdict on many of the counts brought against the defendants. On February 21, for instance, the sixth day of deliberations, the jury sent the Court a note, which read: "Judge Buchwald, we have been unable to reach a majority decision on some of the counts. We need to know how to proceed."[2] The Court discussed this note with the parties and responded with a note of its own, reminding the jurors of the proper standard for reaching a verdict and explaining that disagreement among jurors is common:

> Please remember that all of your findings on
> the jury verdict form as to guilty or not
> guilty, or proved or not proved, must be
> unanimous, which I am sure you understand
> means that all jurors are in agreement. I
> direct you to continue your deliberations.
> I advise you that it is normal for jurors to
> have differences. This is quite common.[3]

The jury then resumed its deliberations.

On February 26, the ninth day of deliberations, the jury sent another note to the Court indicating an inability to reach a verdict. The note read:

> Judge Buchwald, you stated [that] if we had
> any further questions we should address
> [them] to you. After going over all

---

[2] Transcript of the Trial ("Tr.") at 3904-05.
[3] Id. at 3914-15.

> recordings and evidence and "deliberating"
> for all of these days, we are still unable
> to reach a unanimous decision on some counts
> and none of us feel there is any hope of
> changing our minds since they are made up.
> So, here is the silly question: What do we
> do now?[4]

Upon receiving this note and discussing it with the parties, the Court instructed the jury on the possibility of delivering a partial verdict.[5] The jury resumed its deliberations and continued deliberating for the remainder of the day.

The next morning, which was the start of the tenth day of deliberations, the jury sent another note to the Court, indicating that it wished to deliver a partial verdict.[6] Shortly thereafter, the jury returned verdicts as to two of the defendants and returned partial verdicts as to the other four.[7] It did not return a verdict for the remaining charges, however,

---

[4] Id. at 3961.

[5] The Court stated the following to the jury in open Court: "Ladies and gentlemen, your last note to me suggested that you have reached a unanimous decision as to some but not all of the counts in the indictment. If that is in fact the case, it is up to you to decide whether to return those decisions. You may return a partial verdict at any time you choose by advising me in a note that you wish to do so. A partial verdict means a verdict on any defendant on any count. Bear in mind, however, that once you report a partial verdict you cannot change any part of it even if you continue to deliberate as to the counts on which you have not reached a decision. Also, after reporting a partial verdict, should you choose that course, you may be asked to continue your deliberations concerning the unresolved counts. If you decide to report a partial verdict, after hearing what the verdict is, and consulting with the lawyers in the case, I will decide whether or not to ask you to continue your deliberations." Tr. at 3967-69.

[6] Tr. at 3971-72   The note read: "Judge Buchwald, as you directed us yesterday on the partial verdicts we, the jurors, have agreed to give you our decision on some of them. Can you let us know how to proceed? Thank you. [Foreman]."

[7] Id. at 3974-78.

and, as noted, did not return a verdict for any of the charges brought against Altieri.[8]

Following the partial verdict, the government moved for a mistrial on the counts for which the jury had failed to return a verdict, citing the ten days of deliberations following the three week trial, the jury notes expressing deadlock, and the view that further deliberations would be unproductive.[9]  Counsel for all of the remaining defendants assented to the government's motion, but counsel for Altieri requested an Allen charge.[10]  The Court declined to deliver an Allen charge at that time, stating that it did not believe doing so would be productive:

> I don't personally believe that there is
> going to be any change based on the note
> from yesterday and the amount of time that's
> already been spent and given the nature of
> the issues.  It's personally hard for me to
> understand how they could have spent this
> much time already.[11]

Having stated that it believed any future deliberations to be futile, the Court then raised a possible course of action, aside from declaring a mistrial, for the parties to consider. Expressing uncertainty about pursuing such an option, the Court nonetheless asked the parties whether any of them were familiar with a court, in a multi-defendant trial, instructing the jury

---

[8] Id.

[9] Id. at 3979.

[10] Id. at 3979-3981.  One of the defendants, Nunzio Flaccavento, had been acquitted in the partial verdict of all of the charges against him.

[11] Id. at 3982.

to continue deliberating as to only one defendant (the "Proposed Alternative").  The Court asked:

> Has anyone heard of, and I can't say that I have, a direction to the jurors to continue to talk about one defendant? . . . So my question is, given the split, has anyone ever heard of a jury being told that there is a request for you to continue to deliberate with respect to one defendant or certain counts and send them off with that direction and some version of an Allen charge?  I just toss that out because the thought crossed my mind, given the way the views of counsel have split.  I have no idea if that's totally improper, unheard of, problematic in a million different ways, or actually, once voiced, something that [Altieri's counsel] and Mr. Altieri actually want.[12]

In response to this question, none of defense counsel stated that he or she had heard of such a course of action, and the government raised two concerns:   (1) that the jury "might interpret [the Proposed Alternative] as a message that [it] should reach a verdict on Mr. Altieri since the Court is specifically directing them", and (2) that the proposed action might create an appellate issue for the government should the jury convict Altieri on one or more counts.[13]

After a recess, during which the Court considered whether to go forward with the Proposed Alternative, the Court returned

---

[12] Id. at 3983.
[13] Id. at 3984.

and, addressing Altieri's counsel, who continued to object to a mistrial, explained why it had decided to reject that option:

> Let me tell you why I think it's a very bad idea for your client, and I am not going to do it. I, too, have the opportunity when I leave the bench to call higher authorities, at least more experienced judges, and I did that. The one I got to really told me why it was a terrible idea. Because if I do this, the subliminal message to the jury is I understand why you couldn't reach a verdict with respect to the remaining counts for [the other defendants] but I don't really get why you couldn't do it on Mr. Altieri. Since you are going to now focus on Mr. Altieri, the subliminal message is there's enough evidence to convict him. So I don't want to do that for your client because that will be the message. . . . The only conclusion from that is there's enough evidence to convict him.
>
> So, we all benefit from asking higher authorities and more experienced people. Beyond the fact that this judge, who has a tremendous amount of prosecutorial and judicial experience has never heard of any such thing, but that was the reason it was a bad idea, I am not about to put Mr. Altieri into that situation. I think judging from his nodding he appreciates it actually.[14]

As such, and having already determined that further deliberations were likely to be futile, the Court declared a mistrial.[15]  The Court then brought the jury back into court and dismissed them from the case, explaining it was "in agreement that requiring [them] to deliberate further would not be

---

[14] Id. at 3992-3993.

[15] Id.

productive".[16]   Several months later, and having changed counsel,
Altieri made the instant motion to have the charges against him
dismissed pursuant to the Double Jeopardy clause of the Fifth
Amendment.

## DISCUSSION

### A.   Legal Standard

The Double Jeopardy clause of the Fifth Amendment protects
a   defendant   in   a   criminal   proceeding   against   multiple
punishments or repeated prosecutions for the same offense.   See
e.g. United States v. Wilson, 420 U.S. 332, 343 (1975).   Where a
trial court declares a mistrial over a defendant's objection,
the Double Jeopardy clause permits the defendant to be retried
only if "manifest necessity" or "the ends of justice" warranted
terminating the first trial.   United States v. Perez, 22 U.S.
579, 580 (1824); United States v. Williams, 205 F.3d 23, 36 (2d
Cir. 2000) ("double jeopardy will bar a second prosecution
unless there was manifest necessity for the mistrial") (internal
marks omitted).   The trial judge is accorded "broad discretion
in deciding whether or not 'manifest necessity' justifies a
discharge of the jury", Arizona v. Washington, 434 U.S. 497,
509-510 (1978), and it is well settled that a jury's failure to
agree on a verdict constitutes "manifest necessity".   Richardson
v. United States, 468 U.S. 317, 323-24 (1984) ("It has been

---

[16] Id. at 3993-94.

7

established for 160 years . . . that a failure of the jury to agree on a verdict was an instance of manifest necessity which permitted a trial judge to terminate the first trial and retry the defendant because the ends of justice would otherwise be defeated.   Since that time . . . we have constantly adhered to the rule that a retrial following a hung jury does not violate the Double Jeopardy Clause") (internal marks omitted); see also Arizona, 434 U.S. at 509 ("[a] mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has] long [been] considered the classic basis for a proper mistrial"); United States v. Joyner, 201 F.3d 61, 82 (2d Cir. 2000); United States v. Chestaro, 197 F.3d 600, 609 (2d Cir. 1999).

There are no mechanical rules by which a trial judge must determine whether or not a jury is deadlocked, though courts have identified several factors that inform the court's decision, including:  (1) the jury's opinion about its ability to reach a verdict; (2) the length and complexity of the trial; (3) the length of deliberations; (4) the jury's communications with the court; and (5) the coercive impact of future deliberations.   See e.g. United States v. Byrski, 854 F.2d 955, 961-63 (7th Cir. 1988); Arnold v. McCarthy, 566 F.2d 1377, 1386-87 (9th Cir. 1978).   In declaring a mistrial, the trial judge also need not use any specific language or provide an exhaustive

justification for that decision, <u>Arizona</u>, 434 U.S. at 517 ("[A] judge's mistrial declaration is not subject to attack . . . simply because [she] failed to find 'manifest necessity' in those words"), and the trial judge need not make findings regarding the quality of specific alternatives to declaring a mistrial where no reasonable alternatives exist. <u>Illinois v. Somerville</u>, 410 U.S. 458 (1973); <u>Dunkerley v. Hogan</u>, 579 F.2d 141, 147 (2d Cir. 1978) ("We recognize that where the record discloses plausible reasons supporting the declaration of a mistrial the trial judge may not be required to state his reasons").  The law is clear that "a hung jury is the most common example of circumstance in which the need for a mistrial is manifest."  <u>United States v. Huang</u>, 960 F.2d 1128, 1135 (2d Cir. 1992) (citing <u>Oregon v. Kennedy</u>, 456 U.S. 667, 672 (1982)).

**B.   Analysis**

Altieri argues that the charges against him should be dismissed because the Court provided insufficient justification for declaring a mistrial and for overruling Altieri's objection. Specifically, Altieri argues that the Court's stated reason for rejecting the Proposed Alternative (that the Proposed Alternative would send a subliminal message to the jury that it should convict Altieri) was insufficient, thus failing to establish a "manifest necessity" for declaring a mistrial, and that the Court's rejection of that alternative "[c]learly . . .

9

violated . . . Altieri's right to maintain control of his defense strategy and to have his case heard by the tribunal impaneled to decide the case".[17] Altieri cites United States v. MacQueen, 596 F.2d 76, 82-83 (2d Cir. 1979), as well as a number of cases from other jurisdictions, for the proposition that manifest necessity cannot exist where it is apparent from the record that the court did not adequately consider alternatives, and he cites United States v. Dinitz, 424 U.S. 600 (1976) and United States v. Pavloyianis, 996 F.2d 1467 (2d Cir. 1993) for the proposition that Double Jeopardy protections afford a defendant primary control over whether he must continue a trial or, instead, accept a mistrial and face the attendant expense and anxiety of a lengthy appeal and a possible retrial.

With regard to his argument that the Court failed to adequately consider the Proposed Alternative, Altieri relies heavily on United States v. Rivera, 384 F.3d 49 (3d Cir. 2004), where the Third Circuit reversed a trial court's denial of a motion to dismiss charges on double jeopardy grounds, holding that the trial judge's sua sponte declaration of a mistrial over defense counsel's objection was not manifestly necessary. In Rivera, the trial judge declared a mistrial when the government's last witness was suddenly unavailable for a week in the middle of his testimony and proved to be unavailable at the

---

[17] Altieri Br. at 18.

start of the following week, when he was supposed to return.[18]
Citing the numerous interruptions already experienced in the
case, the fact that the jury had been required to sit for long
periods of time, and the concern that the jury would not be able
to adequately remember or put-together the evidence presented to
it, the court declined to order a continuance to allow for the
witness to testify, declared a mistrial, and denied defendants'
subsequent motion to dismiss the charges against them on Double
Jeopardy grounds.[19]   On appeal, the Third Circuit held that the
trial judge's reasoning, which focused on scheduling conflicts,
juror inconvenience, and the jury's ability to piece together
the government's case, did not justify a rejection of the
defendant's proposed alternative course of action – ordering a
continuance until the witness could testify – and did not
demonstrate a manifest necessity for a mistrial.   Altieri argues

---

[18] The witness, who had not yet finished his testimony, had gone to his
home in Florida for the weekend and was unable to return to court as
scheduled because he broke his leg and was in the hospital at the start of
the next week.   The witness was also unable to return to court the following
Monday because, the government explained, he was stopped at the airport due
to medications for his leg that he had in his luggage.   Before the trial
judge declared a mistrial, the government further indicated that the witness
had a doctor's appointment scheduled for 10 a.m. that same day, which would
determine when he could board a plane to return to court.   Id. at 15-17.

[19] The court stated:   "The big problem for me in this case is the way in
which the case has unfolded.   That is, with frequent interruptions, numerous
interruptions, the jurors having to sit for long periods of time, sometimes
for days, as a matter of fact.   Together with the fact that the large portion
of the testimony was recorded, and a large portion of it, recorded testimony,
is still to be presented to the jurors.   I find that the nature of the
recordings particularly is such that jurors are not likely to recall properly
and fit into the proper sequence of events and give proper weight to this
recorded testimony in light of the continued interruptions and the long
delay.   And I [am] dispose[d] to declaring a mistrial, and will so declare.   I
will declare a mistrial."   Id. at 16-17.

11

that here, as in <u>Rivera</u>, the Court provided insufficient reasons for rejecting the Proposed Alternative.[20]

Altieri's argument fails to support a dismissal on Double Jeopardy grounds and we deny that motion for the following reasons. First, the record supports, and the Court clearly articulated, a manifest necessity for declaring a mistrial in this case.[21] The Court declared the mistrial on the tenth day of deliberations (in a case that lasted only three weeks): after the jury sent the Court two notes expressing an inability to reach a verdict on many of the charges; after the Court had instructed the jury to continue deliberating despite this problem (noting that disagreement among jurors is common); after the jury sent a third note to the Court indicating its decision to deliver a partial verdict in the case; and after the jury delivered a partial verdict. As noted <u>supra</u>, the Court also clearly stated, in rejecting Altieri's request for an <u>Allen</u> charge, that it did not believe further deliberations would be productive given the amount of time that the jury had already taken to consider the charges and given the jury's previous

---

[20] <u>Id.</u> at 18 ("As with Altieri, the district court judge [in <u>Rivera</u>] rejected alternatives without a sufficient justification, and thus no manifest necessity existed.").

[21] In his brief, Altieri attempts to divorce the Court's finding that further deliberations would be futile from its declaration of a mistrial, suggesting that only the Court's rejection of the Proposed Alternative is relevant to whether the mistrial was properly declared. Clearly, however, the Court's declaration of a mistrial was <u>fundamentally</u> <u>founded</u> on its finding that further deliberations would not produce a just verdict.

indications of deadlock.[22]   This determination was consistent
with the accepted principle that jury deadlock demonstrates a
manifest necessity for a mistrial.   See United States v.
Goldstein, 479 F.2d 1068-69 (2d Cir. 1973) ("a jury's genuine
inability to agree on a verdict constitutes 'manifest necessity'
warranting the declaration of a mistrial" because requiring
continued deliberations where a jury is deadlocked tends to
"defeat[] the ends of public justice . . . [by] wast[ing]
valuable judicial resources . . . [and by] coer[cing] erroneous
verdicts"); see also United States v. Milan, 17 F.3d 14, 19-20
(2d Cir. 1994) ("a trial judge is best situated to decide
intelligently whether 'the ends of substantial justice cannot be
attained without discontinuing the trial'"); Williams, 205 F.3d
at 36 (mistrial declaration proper where "jurors deliberated for
over two days" despite "relatively simple" trial and indicated
four times that they were unable to reach a verdict); Goldstein,
479 F.2d at 1068-69 (mistrial declaration proper when jury
"twice reported itself unable to agree" during eight hours of
deliberations in a complex case with "almost 50 possible
verdicts").

     Second, the Court adequately considered the Proposed
Alternative and rejected it on appropriate grounds.   See e.g.
MacQueen, 596 F.2d at 82-84 (declaration of mistrial affirmed

_____

[22] See supra note 11.

given indications of jury deadlock; reversal not warranted where judge did not instruct jury on option of giving partial verdict where jury already knew of that option).  Contrary to Altieri's suggestion, this case bears no meaningful resemblance to <u>Rivera</u>, which he argues involved an analogous failure to adequately consider alternatives to a mistrial.  In <u>Rivera</u>, the trial court had declared a mistrial <u>sua</u> <u>sponte</u> and the court of appeals held that, because the trial court failed to adequately consider alternatives, any retrial was prevented by the Double Jeopardy clause of the Fifth Amendment.  Here, by contrast, the government and four defendants moved for a mistrial; the Court raised the alternative in question, even though there was, and still is, no authority to support it; and the Court rejected that alternative only after careful consideration.[23]

Finally, Altieri provides no supportive authority for his suggestion that the charges against him should be dismissed because the Court (he argues) denied him the right to determine his own defense strategy by rejecting the Proposed Alternative over his objection.  To advance his argument, Altieri cites

___

[23] Altieri does not argue that the Court failed to adequately consider the alternative of giving an <u>Allen</u> charge following the partial verdict. Moreover, a court is not required to give an <u>Allen</u> charge where it finds that such a charge would be coercive or unproductive, <u>see e.g.</u> <u>United States v. Martinez</u>, 446 F.2d 118 (2d Cir. 1971); the Court declared a mistrial having already conveyed some of the themes of an <u>Allen</u> charge in response to the first jury note indicating deadlock, <u>see</u> <u>supra</u> note 3; and the Court did consider the possibility of giving a full <u>Allen</u> charge following the partial verdict, concluding that such a charge would not be productive. <u>See</u> <u>supra</u> note 11.

Dinitz and Pavloyianis, which stand for the proposition that a defendant should have primary control over whether or not a case ends in a mistrial where a judicial or prosecutorial error is the basis for considering a mistrial. Neither of those cases is remotely analogous to this one, where a jury deadlock, and not error, necessitated a mistrial. More importantly, neither stands for the proposition that a Court, which has already determined that further deliberations are not likely to produce a verdict, is required to pursue an alternative that it only hesitantly suggested to defense counsel and that it finds, after due consideration, would compromise the public's interest in having "[a] fair trial designed to end in [a] just judgment[]." See Huang, 960 F.2d at 1134-35.

## CONCLUSION

Accordingly, Altieri's motion for a dismissal on Double Jeopardy grounds is denied. Altieri's counsel has indicated that, if this motion were denied, he would likely file an appeal. This suggestion was contained in a letter requesting an adjournment of the current trial date, pending such appeal. Altieri is advised that the current trial date will not be adjourned, although we recognize that, should he appeal and should that appeal be undecided at the commencement of the scheduled trial, any retrial of Altieri would proceed on a separate schedule.

16

**SO ORDERED.**

Dated:     New York, New York
           August 24, 2007

                                          _____
                                          NAOMI REICE BUCHWALD
                                          UNITED STATES DISTRICT JUDGE

16

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for the Government

Jason Halperin, Esq.
Lisa Baroni, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007


Counsel for Altieri

Alan Silber, Esq.
Walder, Hayden & Brognan, P.A.
5 Becker Farm Road
Roseland, NJ 07068